*Juan Carlos Vivar v. Samantha Jackson Dilts, M.D., et al.*, Case No. 82, Sept. Term, 2025, Opinion filed on July 8, 2026, by Berger, J.

DEATH – ACTIONS FOR CAUSING DEATH – LIMITATIONS – COMPUTATION OF LIMITATIONS

Pursuant to the plain language of Maryland Rule 15-1001(d), to participate in a wrongful death action and share in any subsequent recovery, a use plaintiff typically must file a motion to intervene by the earlier of: (1) three years after the death of the injured person (the statutory deadline) or (2) 30 days after being served with the complaint and requisite notice if the use plaintiff resides in Maryland.  Maryland Rule 15-1001(e)(2) provides that a use plaintiff waives their right to participate in the action or claim recovery by failing to file a complaint or motion to intervene by the statutory deadline.  The plain language of Maryland Rule 15-1001(e)(2) operates to bar use plaintiffs from joining a wrongful death action as party plaintiffs even when service of the complaint and requisite notice is not effectuated until after the statutory deadline has passed.

DEATH – ACTIONS FOR CAUSING DEATH – RIGHT OF ACTION AND DEFENSES – CONDITIONS PRECEDENT

The requirement that a use plaintiff file a Complaint or motion to intervene within the statutory limitations period is a condition precedent to maintaining suit.  Failure to act prior to the statutory deadline extinguishes a use plaintiff's claim, therefore, the relation back doctrine cannot be applied to render a motion to intervene timely.

Circuit Court for Prince George's County
Case No. C-16-CV-23-004371

_____

JUAN CARLOS VIVAR

v.

SAMANTHA JACKSON DILTS, M.D., ET AL.

_____

Berger,
Tang,
Kenney, James A., III
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Berger, J.

_____

Filed: July 8, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

In this case, we must decide whether the relation back doctrine applies in wrongful death actions so as to allow a "use plaintiff" who is served after the statutory deadline to formally join the proceedings as a party plaintiff.[1] Alex Vivar Perez ("Alex"), the son of Appellant Juan Carlos Vivar ("Mr. Vivar") and Appellee-Plaintiff Cristina Perez ("Ms. Perez") tragically passed away on August 30, 2020, after a visit to PM Pediatrics Urgent Care in Greenbelt, Maryland.

On August 16, 2023, Ms. Perez filed a statement of claim, including a wrongful death claim, with the Maryland Healthcare Alternative Dispute Resolution Office ("HCADRO") against the attending physician, Samantha Jackson Dilts, M.D. ("Dr. Dilts"), PM Pediatrics Management Group, LLC, and PM Pediatrics of Maryland, LLC (collectively, "Appellee-Defendants"). That same day, Ms. Perez waived arbitration. Thereafter, and pursuant to the relevant statute, Ms. Perez filed the present action in the Circuit Court for Prince George's County on September 22, 2023, in which she named Mr. Vivar as a use plaintiff. Mr. Vivar was served with the Complaint and requisite notice on September 26, 2023. On June 7, 2024, Mr. Vivar filed the instant Motion to Intervene. The circuit court denied Mr. Vivar's Motion to Intervene on February 11, 2025. This appeal followed.

---

[1] As explained by the Supreme Court of Maryland, "[a] use plaintiff in common law pleadings is '[a] plaintiff for whom an action is brought in another's name,' *Black's Law Dictionary* 1579 (8th ed. 2004), and 'who does not join in the action,' Md. Rule 15-1001(b)." *Carter v. Wallace & Gale Asbestos Settlement Tr.*, 439 Md. 333, 336 n.1 (2014).

On appeal, Mr. Vivar presents two questions for our review, which we have rephrased as follows:[2]

> I. Whether the circuit court erred by denying Mr. Vivar's Motion to Intervene as untimely under Maryland Rule 15-1001(e)(2).
>
> II. Whether, provided that the previous question is answered in the affirmative, good cause was shown to excuse Mr. Vivar's late filing under Maryland Rule 15-1001(e)(3).

For the following reasons, we answer the first question in the negative and, therefore, do not reach the second question. We, therefore, affirm.

## BACKGROUND

### *Alex's Death and the Initiation of the Instant Action*[3]

In August 2020, Alex, who had a history of chronic constipation, suffered from an episode of severe abdominal pain and constipation. On August 28, 2020, after Alex's constipation had continued for approximately two weeks, Ms. Perez took Alex to PM Pediatrics in Greenbelt, Maryland. After an enema was administered, the attending

---

[2] Mr. Vivar phrased the questions as follows:

> 1. Did the Circuit Court err by denying Mr. Vivar's Motion to Intervene as untimely pursuant to Md. Rule 15-1001(e)(2)?
>
> 2. If the answer to Question Presented #1 is yes, was Mr. Vivar's late filing excused under Md. Rule 15-1001(e)(3) when the clerk refused to accept his Motion to Intervene, informing him that he was already a plaintiff in the case?

[3] The facts of the underlying lawsuit are disputed. To provide context of the underlying claim, we recite here facts from the Complaint.

2

physician, Dr. Dilts, performed an abdominal examination of Alex. Alex was discharged that same evening, despite having not passed a bowel movement.

The next morning, Alex began throwing up and having diarrhea. Ms. Perez left Alex in the bathroom to get him a glass of water. When Ms. Perez returned, she found Alex unresponsive on the floor. Ms. Perez called 911 and Alex was transported to the hospital where he was diagnosed as having suffered from cardiac arrest and gastrointestinal bleeding. On August 30, 2020, Alex passed away at the age of nine. According to the autopsy report, Alex's cause of death was complications of bowel obstruction due to congenital constipation.

On August 16, 2023, Ms. Perez filed a medical malpractice claim stemming from Alex's death against Appellee-Defendants in the HCADRO. That same day, Ms. Perez filed an Election to Waive Arbitration pursuant to Maryland Code (1974, 2019 Repl. Vol. 2020), § 3-2A-06B of the Courts and Judicial Proceedings Article ("CJP").[4]

On September 22, 2023, Ms. Perez filed a Complaint in the circuit court naming Mr. Vivar as a use plaintiff.[5] The Complaint contains three causes of action: negligence,

---

[4] Pursuant to CJP § 3-2A-06B(f)(1), a plaintiff has 60 days after filing an election to waive arbitration to file a complaint "in the appropriate circuit court or the United States District Court." The operative date for purposes of the statutory deadline with respect to Ms. Perez's claims, therefore, is the date the statement of claim was filed in the HCADRO.

[5] According to Ms. Perez, her original statement of claim filed with the HCADRO named Mr. Vivar as a use plaintiff. Because our forthcoming analysis does not depend on whether Mr. Vivar was in fact named as a use plaintiff in the original statement of claim, we do not address this fact further.

3

wrongful death, and a survival action. Mr. Vivar was served with a copy of the Complaint and the appropriate notice pursuant to Maryland Rule 15-1001(d) on September 26, 2023.[6]

### *Mr. Vivar's Motion to Intervene*

According to Mr. Vivar, he attempted to file a formal motion to intervene at the circuit court on October 19, 2023, but the clerk refused his motion. Mr. Vivar claims that the clerk printed out a "Case Summary" showing that Mr. Vivar was already listed as a plaintiff in the action who was represented by counsel, namely the same counsel representing Ms. Perez. Thereafter, Mr. Vivar mailed the draft motion to intervene to Ms. Perez's counsel.

On November 1, 2023, Ms. Perez's counsel called Mr. Vivar to "allay any confusion" that Mr. Vivar had concerning his rights as a use plaintiff. According to Ms. Perez's counsel, he informed Mr. Vivar that he did not and would not represent him in the pending matter. Additionally, Ms. Perez's counsel explained to Mr. Vivar what a use plaintiff is and informed him that he would have to formally intervene if he wished to participate in the action, directing him to the legal options outlined in the notice letter served upon him.

---

[6] In his principal brief, as well as in his motion for reconsideration and at the hearing on his Motion to Intervene, Mr. Vivar contends that he was served on October 6, 2023. In his reply brief and Motion to Intervene, however, Mr. Vivar notes that he was served on September 26, 2023. The affidavit of service by private process similarly provides that Mr. Vivar was served on September 26, 2023. This discrepancy is not addressed by either party. As we shall explain, because the statutory deadline was August 30, 2023, this discrepancy is immaterial. Accordingly, we assume, without deciding, that Mr. Vivar was served on September 26, 2023.

After retaining counsel, Mr. Vivar filed the instant Motion to Intervene on June 7, 2024. Ms. Perez and Appellee-Defendants each filed motions in opposition and a hearing regarding the motion was held on January 28, 2025. At the hearing, Mr. Vivar conceded that his motion was untimely under the plain language of both the statutory and served notice deadlines in Maryland Rule 15-1001 ("Rule 15-1001").[7] To overcome the statutory deadline, Mr. Vivar asked the circuit court to "make new law" by applying the relation back doctrine to relate back the filing of the Motion to Intervene to the date Ms. Perez initiated the action. Mr. Vivar reasoned that the Legislature could not have intended a situation where, because of the competing timelines in the HCDARO statute and wrongful death rule and statute, a plaintiff could serve a use plaintiff after the statute of limitations had passed, thereby nullifying the use plaintiff's opportunity to participate in the suit. Next, to overcome the served notice deadline, Mr. Vivar argued that the circuit court should find that good cause existed based on the clerk's alleged refusal to accept his Motion to Intervene and assertion that he was already a party plaintiff.

Ms. Perez contended that she complied with Rule 15-1001(d) by serving Mr. Vivar with the Complaint and required notice within 30 days of waiving into circuit court. Further, Ms. Perez argued that, pursuant to Rule 15-1001, because Mr. Vivar filed his Motion to Intervene after the statutory deadline had passed, the circuit court was precluded from finding that good cause excused the late filing. Even if the circuit court were allowed

---

[7] As explained *infra*, under a plain language interpretation of Rule 15-1001, the statutory deadline was August 30, 2023, and the served notice deadline was 30 days after service of the Complaint and requisite notice.

5

to consider good cause, Ms. Perez asserted that no good cause existed because Mr. Vivar did not act with due diligence when confronted with the allegedly contradictory information received from the clerk. Finally, Ms. Perez urged the circuit court to decline Mr. Vivar's request to apply the relation back doctrine and to, instead, apply a plain language interpretation of Rule 15-1001.

Appellee-Defendants argued that, irrespective of the served notice deadline, Mr. Vivar was precluded from participating in the suit as a party plaintiff because he failed to file a Complaint or motion to intervene by the statutory deadline, August 30, 2023. Mr. Vivar agreed with Appellee-Defendants that, if a plain language interpretation of Rule 15-1001 was to be applied, he would be precluded from joining the suit as a party plaintiff.

***The Circuit Court's Ruling***

On February 11, 2025, the circuit court denied Mr. Vivar's Motion to Intervene. Reading from Rule 15-1001, the circuit court reasoned that to participate in the action, Mr. Vivar would have had to

> file [with] the clerk of court in which this action is pending a motion to intervene in the action in accordance with the Maryland rules no later than the earlier of one, the applicable deadline stated in 3-904(g), which is the statute of limitations, and section 5-201(a), which is regarding a disability, or 30 days after being served with the complaint and [the Rule 15-1001] notice.

The circuit court proceeded to discuss the rule's waiver by inaction provision, Rule 15-1001(e)(3), explaining that:

> If a use plaintiff who is served with the complaint and notice . . . does not file a motion to intervene by the served notice deadline, the use plaintiff may not participate in the

6

> action or claim any recovery unless for good cause shown the Court excuses the late filing.
>
> So (e)(3) is really broken up into two sections. One, if the notice of the motion to intervene is not filed by the served notice deadline, then the Court can excuse the late filing if good cause is shown. However, that sentence ends at, the use Plaintiff may not participate in the action or claim any recovery unless for good cause shown the Court excuses the late filing, period.
>
> The next sentence is applicable here. The Court may not excuse the late filing if the statutory deadline is not met. Statutory deadline in this particular case is August 30th, 2023.

Accordingly, the circuit court concluded that, even if it credited Mr. Vivar's assertion that he had tried to file a motion to intervene on October 19, 2023, the Motion to Intervene must still be denied because it was filed after the statutory deadline of August 30, 2023. Mr. Vivar noted a timely appeal. We shall provide additional facts as necessary in our forthcoming analysis.

**STANDARD OF REVIEW**

We review a circuit court's decision on a motion to intervene for abuse of discretion. *WAMCO, Inc. v. Northeast 400, LLC*, 251 Md. App. 196, 205 (2021) (citing *Maryland-Nat'l Cap. Park & Plan. Comm'n v. Town of Washington Grove*, 408 Md. 37, 64 (2009)). A circuit court abuses its discretion "when no reasonable person would take the view adopted by the trial court, or when the court acts without reference to any guiding rules or principles, or when the ruling is clearly against the logic and effect of facts and inferences before the court." *WAMCO, Inc.*, 251 Md. App. at 205 (quoting *Gizzo v. Gerstman*, 245 Md. App. 168, 201 (2020)). Questions of law, such as statutory construction and

interpretation are, however, reviewed *de novo*. *Bethesda Afr. Cemetery Coal. v. Hous. Opportunities Comm'n of Montgomery Cnty.*, 489 Md. 1, 42 (2024) (citing *Elsberry v. Stanley Martin Cos., LLC*, 482 Md. 159, 178 (2022)).

## DISCUSSION

### I.     The circuit court did not err in denying Mr. Vivar's motion to intervene.

On appeal -- as he did before the circuit court -- Mr. Vivar concedes that his Motion to Intervene was untimely under Rule 15-1001. Nevertheless, Mr. Vivar contends that the circuit court erred in denying his Motion to Intervene.

### A.     The legal landscape of wrongful death actions in Maryland

To begin, we turn briefly to the history of Maryland's wrongful death statute. As explained in *Carter*,

> "[t]he common law not only denied a tort recovery for injury once the tort victim had died, it also refused to recognize any new and independent cause of action in the victim's dependents or heirs for their own loss at his [or her] death." *Walker v. Essex*, 318 Md. 516, 522, 569 A.2d 645, 648 (1990) (quoting W. Page Keeton et al., *Prosser and Keeton on Torts* § 127, at 945 (5th ed. 1984)). In 1846, to counter this harsh rule, the English legislature created a cause of action for wrongful death, known as Lord Campbell's Act, which required a wrongful death suit to be brought by the executor or administrator of the estate for the use of the parties named in the complaint. *Walker*, 318 Md. at 522-23, 569 A.2d at 648. The purpose of Lord Campbell's Act was "to compensate the *families* of persons killed by the wrongful act, neglect, or default of another person[,]" and the measure of damages was based on the loss sustained by the parties on whose behalf the action was brought. *Stewart v. United Elec. Light & Power Co.*, 104 Md. 332, 343, 65 A. 49, 53 (1906). Subsequently, every American state adopted its own wrongful death statute, with many states requiring the suit to be brought by the executor, administrator, or personal representative of the

8

deceased person's estate. *Walker*, 318 Md. at 522-23, 569 A.2d at 648.

*Carter v. Wallace & Gale Asbestos Settlement Tr.*, 439 Md. 333, 361 (2014).

Maryland adopted its wrongful death statute, bearing close resemblance to Lord Campbell's Act, in 1852. *Walker*, 318 Md. at 522-23. Notably, under Maryland's statute, unlike under the English law, a wrongful death action "is brought in the name of a person entitled to recover, and to the use of all such parties who may have an interest." *Id.* at 523. "It follows then, based on the history of the wrongful death cause of action, that a beneficiary (or a personal representative with an interest) would bring the suit for the use of the other parties in interest." *Carter*, 439 Md. at 362.

Maryland's wrongful death statute is codified in Sections 3-901 through 3-904 of the Courts and Judicial Proceedings Article. Critical to our resolution of the present case, CJP § 3-904 and Rule 15-1001 govern the procedures of a wrongful death action. In relevant part, CJP § 3-904 provides:

> (a)(1) [With exceptions that do not apply here], an action under this subtitle shall be for the benefit of the wife, husband, parent, and child of the deceased person.
>
> . . .
>
> (c)(1) In an action under this subtitle, damages may be awarded to all beneficiaries proportioned to the injury resulting from the wrongful death.
>
> (2) Subject to § 11-108(d)(2) of this article, the amount recovered shall be divided among the beneficiaries in shares directed by the verdict.
>
> (d) The damages awarded under subsection (c) of this section are not limited or restricted by the "pecuniary loss" or

9

"pecuniary benefit" rule but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education where applicable for the death of:

. . .

   (2) A minor child;

. . .

(f)   Only one action under this subtitle lies in respect to the death of a person.

(g)(1) [With exceptions that do not apply here], an action under this subtitle shall be filed within three years after the death of the injured person.

. . .

The so-called "one action rule" embodied in CJP § 3-904(f) "codifies one of the main policies underlying wrongful death statutes[:] . . . . 'to protect a defendant from being vexed by several suits instituted by or on behalf of different equitable plaintiffs for the same injury, when all the parties could be joined in one proceeding.'" *Carter*, 439 Md. at 363 (quoting *Walker*, 318 Md. at 523).

The procedure for providing notice to use plaintiffs and the subsequent joinder of use plaintiffs is delineated in Rule 15-1001. Before we endeavor to interpret the relevant provisions of Rule 15-1001, we address the pertinent evolution of the rule. The Supreme Court of Maryland's decision in *Univ. of Md. Medical Sys. Corp. v. Muti*, 426 Md. 358 (2012) (superseded by Rule 15-1001) was "the catalyst of this evolution," which was subsequently chronicled in *Carter*. *Carter*, 439 Md. at 364.

10

The *Carter* Court was presented with the question of whether use plaintiffs are required to formally join an action prior to the expiration of the three year limitations period in order to participate in subsequent recovery. *Id.* at 347. At the time of the underlying trial in *Carter*, Rule 15-1001 provided:

> (a) Applicability. This Rule applies to an action involving a claim for damages for wrongful death.
>
> (b) Plaintiff. If the wrongful act occurred in this State, all persons who are or may be entitled by law to damages by reason of the wrongful death shall be named as plaintiffs whether or not they join in the action. The words "to the use of" shall precede the name of any person named as a plaintiff who does not join in the action.
>
> (c) Notice to Use Plaintiffs. The party bringing the action shall mail a copy of the complaint by certified mail to any use plaintiff at the use plaintiff's last known address. Proof of mailing shall be filed as provided in Rule 2-126.
>
> (d) Complaint. In addition to complying with Rules 2-303 through 2-305, the complaint shall state the relationship of each plaintiff to the decedent whose death is alleged to have been caused by the wrongful act.

*Id.* at 364 (quoting Maryland Rule 15-1001). The Court noted that:

> The conclusions drawn from the case law interpreting Rule 15-1001 (prior to *Muti*) can be summarized in two general propositions: (1) Maryland Rule 15-1001(b) did not require formal joinder; and (2) Maryland Rule 15-1001 was more than just a notice rule because use plaintiffs are real parties in interest whose interests must be acknowledged and protected throughout the litigation.

*Carter*, 439 Md. at 364-65 (citing *Ace Am. Ins. Co. v. Williams*, 418 Md. 400, 422 (2011) (superseded by Rule 15-1001) and *Williams v. Work*, 192 Md. App. 438, 455 (2010) (superseded by Rule 15-1001)).

11

For the duration of the trial in *Carter*, therefore, there was no clear directive regarding *how* a use plaintiff could join in a wrongful death action. Indeed,

> [t]he first affirmative directive to use plaintiffs explaining how to join in a wrongful death action occurred in [the Supreme Court of Maryland's] 2012 opinion in *Muti*. In that case, [the] Court undertook the task of clarifying the case law on use plaintiffs. In a section entitled "Some Considered Dicta," the majority opinion explained the standard for a named use plaintiff to join in the wrongful death action when it stated:
>
>> Rule 15-1001(b) distinguishes between those beneficiaries who join in the action for damages and those, the use plaintiffs, who do not. Use plaintiffs who wish to assert their respective claims for damages must timely join the action by indicating to the court and to the original parties in some clear fashion that they are claiming their "share." Ordinarily, this is done by intervening.

*Carter*, 439 Md. at 367 (quoting *Muti*, 426 Md. at 384).

In 2012, the Supreme Court of Maryland Standing Committee on Rules of Practice and Procedure Committee ("Rules Committee") "closed th[e] door" for "interpretation [of] the precise manner by which a use plaintiff could clearly claim [their] share" by recommending amendment to Rule 15-1001 "to implement holdings of the Court in [*Muti*]." *Carter*, 439 Md. at 367-68 (citing Court of Appeals Standing Committee on Rules of Practice and Procedure, Meeting Minutes of June 21, 2012, at 105).

Effective January 1, 2013, "[t]he new version of [] Rule 15-1001 . . . substantially incorporated the old iteration of sections (a) and (b)," while amending other provisions. *Carter*, 439 Md. at 368. In pertinent part, the amended Rule 15-1001 -- which governs the present case -- provides:

12

(c)     Complaint.    The complaint shall state (1) the relationship of each plaintiff to the decedent whose death is alleged to have been caused by the wrongful act, (2) the last known address of each use plaintiff, and (3) that the party bringing the action conducted a good faith and reasonably diligent effort to identify, locate, and name as use plaintiffs all individuals who might qualify as use plaintiffs. The court may not dismiss a complaint for failure to join all use plaintiffs if the court finds that the party bringing the action made such a good faith and reasonably diligent effort.

(d)     Notice to Use Plaintiff. The party bringing the action shall serve a copy of the complaint on each use plaintiff pursuant to Rule 2-121. The complaint shall be accompanied by a notice in substantially the following form:

[Caption of case]

NOTICE TO     [Name of Use Plaintiff]

You may have a right under Maryland law to claim an award of damages in this action. You should consult Maryland Code, § 3-904 of the Courts Article for eligibility requirements. Only one action on behalf of all individuals entitled to make a claim is permitted. If you decide to make a claim, you must file with the clerk of court in which this action is pending a motion to intervene in the action in accordance with the Maryland Rules no later than the earlier of (1) the applicable deadline stated in § 3-904(g) and § 5-201(a) of the Courts Article ["the statutory deadline"] or (2) 30 days after being served with the complaint and this Notice if you reside in Maryland, 60 days after being served if you reside elsewhere in the United States, or 90 days after being served if you reside outside of the United States ["the served notice deadline"]. You may represent yourself, or you may obtain an attorney to represent you. If the court does not receive your written notice to intervene by the earlier of the applicable deadline, the court may find that you have lost your right to participate in the action and claim any recovery.

13

(e)     Waiver by Inaction.

   (1) *Definitions*.  In this section and in section (f) of this
       Rule, "statutory deadline" means the applicable
       deadline stated in Code, Courts Article, § 3-904(g)
       and § 5-201(a), and "served notice deadline" means
       the additional applicable deadlines stated in the
       notice given pursuant to section (d) of this Rule.

   (2) *Failure to Satisfy Statutory Time Requirements*.  An
       individual who fails to file a complaint or motion to
       intervene by the statutory deadline may not
       participate in the action or claim a recovery.

   (3) *Other Late Filing*.  If a use plaintiff who is served
       with a complaint and notice in accordance with
       section (d) of this Rule does not file a motion to
       intervene by the served notice deadline, the use
       plaintiff may not participate in the action or claim
       any recovery unless, for good cause shown, the court
       excuses the late filing.  The court may not excuse the
       late filing if the statutory deadline is not met.

(f)     Subsequently Identified Use Plaintiff.  Notwithstanding
        any time limitations contained in Rule 2-341 or in a
        scheduling order entered pursuant to Rule 2-504, if,
        despite conducting a good faith and reasonably diligent
        effort to identify, locate, and name all use plaintiffs, an
        individual entitled to be named as a use plaintiff is not
        identified until after the complaint is filed, but is
        identified by the statutory deadline, the newly identified
        use plaintiff shall be added by amendment to the
        complaint as soon as practicable and served in
        accordance with section (d) of this Rule and Rule 2-
        341(d).

Rule 15-1001.  After the amendments, therefore, use plaintiffs must "file a motion to

intervene to be joined as a party plaintiff in a wrongful death action." *Carter*, 439 Md. at

369-70.  The sample notice provided in Rule 15-1001(d) provides use plaintiffs with

information regarding how to intervene and the applicable deadlines for doing so.

14

The *Carter* Court went beyond determining whether the use plaintiffs "did enough to join in the action" prior to the expiration of the three year limitations period under the law as it stood during the duration of trial. *Carter*, 439 Md. at 370. Indeed, the Court analyzed the outcome under three versions of the law: (1) pre-*Muti*; (2) post-*Muti*, but before the 2012 amendments to Rule 15-1001; and (3) post-Rule 15-1001 amendment. The trial in *Carter* occurred before the Court's decision in *Muti* and the subsequent revisions to Rule 15-1001 when the relevant use plaintiffs were "real parties in interest that were not required to formally join in the proceeding in order to share in an award for damages." *Id.* The *Carter* Court, therefore, concluded that "the use plaintiffs' knowing consent to and active participation in the litigation was the functional equivalent of joinder." *Id.*

Relevant here, the Court went on to explain:

> [I]f we were evaluating the facts of this case under the state of the law following the 2012 amendments to Rule 15-1001 (effective January 1, 2013), our inquiry would be whether the use plaintiffs "file[d] a complaint or motion to intervene by the statutory deadline." Rule 15-1001(e)(2). This would be a very brief inquiry because it is clear by all accounts that the use plaintiffs did not ever formally join in the present action. Therefore, if the trial in the case at bar took place on or after January 1, 2013, the use plaintiffs would all be barred from recovery because the statute of limitations would have run long before any formal joinder occurred.

*Id.* at 376.

## B. A plain language interpretation of Rule 15-1001 is proper

We now turn to interpreting the pertinent provisions in Rule 15-1001. According to Mr. Vivar, the circuit court erred in denying his Motion to Intervene because a plain language interpretation of Rule 15-1001 is improper here. Such a reading, Mr. Vivar

15

suggests, would thwart legislative intent where the competing deadlines of Rule 15-1001(e), CJP § 3-904(g)(1), and CJP § 3-2A-06B(f)(1) are in tension.  That is, Mr. Vivar contends that, because CJP § 3-2A-06B(f)(1) gives a claimant who waives arbitration with the HCADRO 60 days to file their complaint in the appropriate circuit court or the United States District Court, a plaintiff may -- as was done here -- provide the notice required by Rule 15-1001(d) to a use plaintiff *after* the statutory deadline has passed, thereby eliminating a use plaintiff's opportunity to intervene.  Such an outcome, according to Mr. Vivar, fails to further the legislative intent to: (1) effectuate the "one action rule to prevent vexation of the defendant by multiple lawsuits;" and (2) apply the "one action rule to compensate the families of the decedent as was conceived in the Lord Campbell Act." Further, Mr. Vivar asserts that such a result undermines the legislative intent embodied in the served notice deadline, that is, to allow grieving use plaintiffs time to determine whether to participate in a wrongful death action.  Rather than offering an alternative construction of Rule 15-1001, Mr. Vivar urges us to conclude that the relation back doctrine applies to render his Motion to Intervene timely.

Ms. Perez and Appellee-Defendants (collectively, "Appellees") counter that a plain reading of Rule 15-1001 is proper because the plain meaning of the rule is unambiguous: a use plaintiff waives their right to participate in a wrongful death action by failing to file a motion to intervene or complaint by the statutory deadline.  Accordingly, Appellees contend that the circuit court properly denied Mr. Vivar's Motion to Intervene as untimely.

"The cardinal rule of statutory interpretation is to ascertain and effectuate the General Assembly's purpose and intent when it enacted the statute."  *Leford v. Jenway*

16

*Contracting, Inc.*, 490 Md. 666, 680 (2025) (quoting *Zukowski v. Anne Arundel Cnty.*, 490 Md. 243, 264 (2025)) (cleaned up). In so doing, "[w]e assume that the General Assembly's intent is 'expressed in the statutory language' and therefore begin our analysis with the plain language of the statute.'" *Zukowski*, 490 Md. at 264 (quoting *Spevak v. Montgomery Cnty.*, 480 Md. 562, 571-72 (2022)). We begin "by looking to the normal, plain meaning of the text, 'ensur[ing] that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.'" *Zukowski v. Anne Arundel Cnty.*, 490 Md. 243, 264 (2025) (quoting *Spevak v. Montgomery Cnty.*, 480 Md. 562, 572 (2022)). "The same principles which are applied in statutory interpretation apply with equal force to our interpretation of the Maryland Rules." *In re Mark M.*, 365 Md. 687, 711 (2001) (citing *Johnson v. State*, 360 Md. 250, 264 (2000)).

Although we focus our analysis on the plain text, we do not read "statutory language in a vacuum" or confine our interpretation "to the isolated section [at issue] alone." *Zukowski*, 490 Md. at 264 (quoting *Lockshin v. Semsker*, 412 Md. 257, 275 (2010)). Rather, "we analyze the statutory scheme as a whole, considering the 'purpose, aim or policy of the [General Assembly] reflected in the statute.'" *Zukowski*, 490 Md. at 264-65 (quoting *McClanahan v. Wash. Cnty. Dep't of Soc. Servs.*, 445 Md. 691, 701 (2015)). "If we are satisfied that the statute's plain language is unambiguous and clearly communicates the General Assembly's intent, then our inquiry ends, 'and we apply the plain meaning of the statute.'" *Zukowski*, 490 Md. at 265 (quoting *Hollingsworth v. Severstal Sparrows Point, LLC*, 448 Md. 648, 655 (2016)).

The parties agree that, pursuant to the plain language of Rule 15-1001(d), to participate in the present action Mr. Vivar was required to file a Motion to Intervene with the clerk of the circuit court by the earlier of: (1) the statutory deadline (August 30, 2023) or (2) the served notice deadline (30 days after being served). Mr. Vivar concedes that the Motion to Intervene was untimely under either deadline. What is more, Mr. Vivar acknowledges that, should we apply a strictly plain language review of Rule 15-1001(e)(2), he would be barred from joining as a party plaintiff because he missed the statutory deadline. We agree.

To be sure, pursuant to Rule 15-1001(e)(2): "[a]n individual who fails to file a complaint or motion to intervene by the statutory deadline may not participate in the action or claim a recovery." This language unambiguously sets out a process by which an individual's failure to act before the statutory deadline constitutes waiver. As noted, it is undisputed that Mr. Vivar did not file either a complaint or a motion to intervene by the statutory deadline, August 30, 2023. Rather, Mr. Vivar did not file the instant Motion to Intervene until June 7, 2024. Accordingly, applying the plain language of Rule 15-1001(e)(2), we conclude that Mr. Vivar waived his ability to participate in the present action as a party plaintiff.

We are unpersuaded by Mr. Vivar's argument that a plain language interpretation is improper because such a result fails to further the legislative intent underpinning Maryland's wrongful death statute. First, contrary to Mr. Vivar's assertion, the waiver that results from a plain language application of Rule 15-1001(e)(2) does not ignore the policy of preventing vexation of defendants by multiple suits. Indeed, once the statutory deadline

18

has passed, there can be no second suit. Moreover, had Mr. Vivar acted by filing his own claim after Ms. Perez filed hers but before he was served, the multiple resulting suits could simply be joined into one. Rule 15-1001(e)(2) expressly contemplates this by stating that failing "to file *a complaint or* a motion to intervene" before the statutory deadline constitutes waiver.

Second, the result of a plain language interpretation here does not ignore the intent to compensate aggrieved families. Rather, Rule 15-1001 lays out the express procedures which eligible individuals must follow to be compensated in a wrongful death action. The fact that a family member may end up not being compensated for such a loss as a result of their failure to comply with the express provisions in Rule 15-1001 does not undermine that intent.

That Mr. Vivar was not served with the Complaint and the Rule 15-1001(d) notice until *after* the statutory deadline passed does not change our conclusion.[8] Critically, Rule

---

[8] At oral argument, Mr. Vivar raised an argument not previously articulated before the circuit court or in briefing. Specifically, Mr. Vivar argued that we should apply the good cause exception in Rule 15-1001(e)(3) to excuse his late filing, even without application of the relation back doctrine. As noted *supra*, Rule 15-1001(e)(3) provides:

> *Other Late Filing.* If a use plaintiff who is served with a complaint and notice in accordance with section (d) of this Rule does not file a motion to intervene by the served notice deadline, the use plaintiff may not participate in the action or claim any recovery unless, for good cause shown, the court excuses the late filing. The court may not excuse the late filing if the statutory deadline is not met.

According to Mr. Vivar, Rule 15-1001(e)(3) does not apply here because he was not served in accordance with Rule 15-1001(d). As Appellees noted at oral argument, however, Mr. Vivar did not identify how Rule 15-1001(d) was violated. Even if Mr. Vivar had preserved

15-1001 expressly contemplates that the statutory deadline may, in some cases, be earlier than the served notice deadline. Indeed, the Rule 15-1001(d) notice provides that, to participate as a party plaintiff, a use plaintiff must file a motion to intervene by the *earlier of* either the statutory deadline or the served notice deadline. The plain language of Rule 15-1001, therefore, contemplates that, at least in some cases, a use plaintiff may not be allotted the full served notice window to decide whether to intervene in the suit.

Rule 15-1001(f), regarding the addition of use plaintiffs identified after a complaint is filed, further evinces an understanding that, because of the statutory deadline, some use plaintiffs may not be able to intervene. To be sure, Rule 15-1001(f) provides that such additional use plaintiffs must be added only when identified "by the statutory deadline." This provision, therefore, expressly contemplates that if, despite conducting a good faith and reasonably diligent effort to identify, locate, and name all use plaintiffs, a use plaintiff is not identified until after the complaint is filed and after the statutory deadline, such an individual need not be added to the complaint and served because they would be precluded from participating in the suit.

Moreover, as Appellee-Defendants aptly note, Mr. Vivar could have filed a Complaint prior to the statutory deadline; nothing required Mr. Vivar to wait for Ms. Perez to file a suit. Not serving a use plaintiff until after the statutory deadline, therefore, does not "ice-out fellow plaintiffs" as Mr. Vivar contends. Rather, such putative fellow

---

this argument, it would not change our conclusion. Indeed, as discussed *supra*, Rule 15-1001(e)(2) is clear: a use plaintiff's failure to "file a complaint or motion to intervene by the statutory deadline" precludes participation in the action and recovery therefrom.

plaintiffs maintain the same right to file a complaint *or* motion to intervene before the statutory deadline. We recognize the harsh result of strict adherence to the plain language of Rule 15-1001 and the statutory deadline, but we are duty bound to apply the law as written.[9]

### C.     The relation back doctrine does not apply

Next, Mr. Vivar urges us to apply the relation back doctrine to overcome his motion's untimeliness under the statutory deadline. Specifically, Mr. Vivar argues that his Motion to Intervene should relate back to the date on which Ms. Perez filed her initial claim with the HCADRO. Mr. Vivar contends that the Supreme Court of Maryland expressly left open the question of whether the relation back doctrine applies in wrongful death actions to allow use plaintiffs to formally join after the expiration of the statutory deadline in *Carter*. As explained *supra*, the *Carter* Court applied Rule 15-1001 and interpretations thereof that existed before the current iteration of the rule and concluded that the use plaintiffs were not barred from recovery. In a footnote at the end of the case, the Supreme Court noted: "Because we hold that the use plaintiffs are not precluded from claims for damages, we do not reach the question of whether the relation back doctrine is applicable here." *Carter*, 439 Md. at 376 n.20. Because he would be precluded from claiming damages under a plain language interpretation of Rule 15-1001, Mr. Vivar urges us to conclude that the relation back doctrine applies.

---

[9] As for any tension between Rule 15-1001(e), CJP § 3-904(g)(1), and CJP § 3-2A-06B(f)(1), the Rules Committee and General Assembly are, of course, free to address any unintended outcome by amending the relevant deadlines.

Appellees counter that applying the relation back doctrine would "set troubling precedent" and would potentially allow use plaintiffs "to intervene at virtually any point in a case's lifespan," thereby thwarting the certainty and finality that statutory time limitations are designed to ensure. Moreover, Appellees assert that Maryland courts have expressly declined to apply the relation back doctrine in wrongful death actions after the statutory deadline has passed and in cases where the proposed amendment to the suit may pyramid damages.[10]

### 1. *The relation back doctrine cannot be applied because the three year statutory deadline is a condition precedent*

The relation back doctrine allows for amended causes of action after the expiration of the applicable statute of limitations in certain situations. *See Nam v. Montgomery Cnty.*, 127 Md. App. 172, 186 (1999) ("Maryland recognizes the doctrine of 'relating back.' The doctrine of relation back provides that if the factual situation remains essentially the same after the amendment as it was before it, the doctrine of relation back applies and the amended cause of action is not barred by limitations.").

Although the relation back doctrine may overcome an expired statute of limitations, it cannot overcome the failure to meet a condition precedent. *Ferguson v. Loder*, 186 Md. App. 707, 727 (2009). Indeed, "the failure to meet a condition precedent extinguishes the

---

[10] Although the circuit court did not expressly articulate the conclusion that the relation back doctrine does not apply in wrongful death actions, such a conclusion is implicit in its holding. Indeed, the circuit court reiterated that the statutory deadline was August 30, 2023, and did not indicate that the fact that Mr. Vivar was served *after* the statutory deadline had any bearing on that deadline.

right itself." *Id.* The Supreme Court of Maryland has explained the distinction between a condition precedent to maintaining suit and a statute of limitations as follows:

> We have previously defined a "condition precedent" as "a condition attached to the right to sue at all." *Waddell v. Kirkpatrick*, 331 Md. 59, 626 A.2d 353, 356 (1993). It "operates as a limitation of the liability itself created, and not of the remedy alone." *Id.*, quoting *State v. Parks*, 148 Md. 477, 480, 129 A. 793, 794 (1925). "The liability and the remedy are created by the same statutes, and the limitations of the remedy are, therefore, to be treated as limitations of that right." *Id.* Conversely, "a statute of limitations affects only the remedy, not the cause of action." *Id.* A condition precedent cannot be waived under the common law and a failure to satisfy it can be raised at any time because the action itself is fatally flawed if the condition is not satisfied.

*Rios v. Montgomery Cnty.*, 386 Md. 104, 127 (2005).

In *University of Maryland Medical Systems Corp. v. Muti*, 426 Md. 358 (2012), the Court explained that,

> [s]ince at least *State, u/o Stascieicz v. Parks*, 148 Md. 477, 479-82, 129 A. 793, 795 (1925), this Court has construed the time limit in the wrongful death statute to be a substantive provision, that is, a condition precedent to asserting the statutorily created cause of action. *See, e.g.*, *Trimper v. Porter-Hayden*, 305 Md. 31, 501 A.2d 446 (1985) (superseded in part by statute, § 3-904(g)(2), regarding occupational disease); *Slate v. Zitomer*, 275 Md. 534, 542, 341 A.2d 789, 794 (1975), *cert. denied*, 423 U.S. 1076, 96 S. Ct. 862, 47 L.Ed.2d 87 (1976). A plaintiff who does not assert the cause of action within the statutorily prescribed time, now three years, loses the right to sue a defendant who is not estopped to assert the defense. *See Chandlee v. Shockley*, 219 Md. 493, 502-03, 150 A.2d 438, 443 (1959).

*Muti*, 426 Md. at 370-71.

23

In *Muti*, the decedent adopted his stepson, Ricky, during a previous marriage. *Id.* at 363. When decedent's widow filed the subject wrongful death action, she did not list Ricky as a use plaintiff. *Id.* The circuit court granted the University of Maryland Medical System Corp.'s ("UMMSC") motion to dismiss the case based on the widow's failure to name Ricky as a use plaintiff in violation of Rule 15-1001(b). *Id.* at 366. On appeal, the widow argued, among other things, that the relation back doctrine should be applied to relate back the addition of Ricky as a use plaintiff to when the action was initially filed. *Id.* at 376. Rejecting the argument, the Court held that "[r]elation back cannot be applied in this case, [] because Ricky's claim has expired by operation of the three year condition precedent." *Id.* at 376-77.

Mr. Vivar contends that *Muti* is inapposite because, unlike Ricky who was unknown to UMMSC prior to the expiration of the statutory deadline, Mr. Vivar was named as a use plaintiff at the initiation of the present action and, therefore, was known to Appellee-Defendants. We disagree.

Although it is accurate that Ricky had not been identified to the defendants in *Muti*, that fact was not the center of the Court's relation back analysis as Mr. Vivar suggests. To be sure, *Muti*'s holding that "[r]elation back cannot be applied [] because Ricky's claim has expired by operation of the three year condition precedent" is not qualified by the fact that he was not known to UMMSC. *Id.* at 376-77. Rather, the holding in *Muti* is based on the statutory deadline being a condition precedent which, if not met, extinguishes a putative party plaintiff's claim. *Id.* at 370-71.

24

We note that the language from *Muti* upon which Mr. Vivar relies is extracted from the Court's discussion of UMMSC's argument that the requirement to name use plaintiffs should be construed as a condition precedent to maintaining suit. In that discussion, the Court differentiated *Ace American Insurance Co. v. Williams*, 418 Md. 400 (2011) from the facts in *Muti*, noting that in *Ace*, the original plaintiffs did not lose their claims as a result of failing to name known beneficiaries as use plaintiffs. *Muti*, 426 Md. at 376. Rather, the underlying judgment in *Ace* was vacated and remanded for proceedings to which the original plaintiffs and the use plaintiffs, who had made claims prior to the expiration of the statutory deadline, would be parties. *Id.* (citing *Williams v. Work*, 192 Md. App. 438, 468 (2010), *aff'd*, *Ace Am. Ins. Co. v. Williams*, 418 Md. 400 (2011)). The *Muti* Court rejected UMMSC's argument, but explained that allowing the Mutis to proceed, despite having failed to name Ricky as a use plaintiff, "does not affect the long recognized condition precedent that requires a beneficiary to sue within three years of death. In the case *sub judice*, Ricky did not do so. Consequently, Ricky's claim has expired." *Muti*, 426 Md. at 376.

Mr. Vivar does not cite any case holding that the three year limitation to maintaining a wrongful death action -- either by intervening in an existing suit or filing a complaint -- is *not* a condition precedent, nor can we find one.

We are not persuaded by Mr. Vivar's argument that construing the three year limitation to wrongful death actions as a condition precedent would frustrate the policy underpinning Maryland's wrongful death statute. Mr. Vivar contends that treating any part of Rule 15-1001 as a condition precedent "would allow savvy litigants in medical

malpractice wrongful death statutes [sic] to ice-out fellow plaintiffs to their own personal and financial benefit—no longer being required to share in damages, litigation strategy, and collective decision-making" and would undermine the one action rule. This argument, however, presupposes that individuals such as Mr. Vivar must wait on other entitled individuals before acting upon a wrongful death claim. As explained *supra*, Rule 15-1001 provides to all entitled individuals the opportunity to bring a wrongful death claim within three years of the decedent's death by either initiating an action by filing a complaint or filing a motion to intervene in an action in which they are named a use plaintiff. The rule does not require that an individual wait to act until named as a use plaintiff in a lawsuit initiated by someone else. In other words, the conclusion that the three year limitations period is a condition precedent does not allow plaintiffs to "ice out" use plaintiffs. Mr. Vivar had the same three years to bring a suit that Ms. Perez did and the fact that Mr. Vivar was not served in the present action until after the statutory deadline passed does not alter that right.

Similarly, we are not persuaded by the additional language from *Ace* cited by Mr. Vivar at oral argument. The language cited provides:

> As we see it, Rule 15-1001 is in the nature of a joinder rule or a condition precedent that requires that all known statutory beneficiaries, *i.e.,* the real parties in interest, be identified as parties to the litigation.
>
> ***
>
> Although Rule 15-1001(b) does not require formal joinder, the failure to include a known statutory beneficiary as a plaintiff or a "use plaintiff" in a wrongful death action and to settle without providing for the beneficiary can be analogized to the

26

> failure to join a necessary party in an action where joinder is required. In our view, because of the one action rule, the failure to do so is a "defect" or "mistake" of jurisdictional proportions in the proceeding, which may be raised at any time. *See S. Mgmt. Corp. v. Kevin Willes Constr. Co.*, 382 Md. 524, 550[, 856 A.2d 626, 641] (2004) ("Failure to join a necessary party constitutes a defect in the proceedings that cannot be waived by the parties, *and may be raised at any time, including for the first time on appeal*."). That would be true whether the failure to name the statutory beneficiary as a plaintiff or use plaintiff is attributed to a failure to file or to a clerk's error in docketing a filed pleading. In a situation where no financial provisions were made for known beneficiaries, the former is in the nature of a jurisdictional mistake and the latter is an irregularity of process or procedure. Either would permit, and, in the circumstances of this case, require, opening the judgment to protect the interests of those beneficiaries.

*Ace Am. Ins. Co.*, 418 Md. at 423 (quoting *Williams*, 192 Md. App. at 452, 455-56)).

This language is inapposite for two reasons. First, Mr. Vivar does not allege, nor could he, that Ms. Perez failed to name him as a use plaintiff. Rather, Mr. Vivar's argument is that he was served after the statutory deadline, making it so he could not join the suit. Second, and critically, the unnamed use plaintiffs at issue in *Ace* asserted their rights within the three year limitations period. Indeed, in distinguishing *Ace*, the *Muti* Court noted:

> *Ace* . . . recognized the viability of claims of known beneficiaries *who asserted their rights within three years of the decedent's death*, but who had not been accounted for in a settlement that was reduced to a judgment. *Ace* [allowed for the] reopening [of] an enrolled judgment in order to permit the resolution of the claims of the omitted beneficiaries.

*Muti*, 426 Md. at 390. Mr. Vivar concedes that he did not file a Complaint or Motion to Intervene within three years of Alex's death. *Ace*, therefore, does not alter our conclusion.

27

### 2. *Even if the statutory deadline is not a condition precedent, the relation back doctrine does not apply*

Even if the statutory deadline is not a condition precedent rendering Mr. Vivar's claim expired, the relation back doctrine does not apply. As explained in *Crowe v. Houseworth*, 272 Md. 481 (1974), upon which Mr. Vivar relies:

> A frequently encountered problem, which is the result of the more liberal use of amendments, is whether a new action has commenced, an action which may be barred by limitations, or whether the doctrine of relation back is applicable: that is, whether the assertion of the original complaint tolled the running of the statute. The modern view seems to be that so long as the operative factual situation remains essentially the same, no new cause of action is stated by a declaration framed on a new theory or invoking different legal principles. As a consequence, the doctrine of relation back is applied, and the intervention of a plea of limitations prevented[.] . . . Similar problems are encountered where amendments involve the addition of, or substitution of, parties.
>
> Our cases involving the doctrine of relation back have dealt more frequently with the amendment of the averments of a declaration than with the addition or substitution of parties by amendment. . . .

*Crowe*, 272 Md. at 485-86.

Noting that "there is scant authority on the question of the applicability of the doctrine in cases where new plaintiffs seek to come in," *id.* at 486, the Court adopted the rule that, "when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist," and the relation back doctrine "should be applied." *Id.* at 489 (quoting *N.Y. Cent. & H. R. R. Co. v. Kinney*, 260 U.S. 340, 346 (1922)). The Court concluded that the amendment at issue to add additional joint tenants as parties should have

28

been allowed under the relation back doctrine, explaining that "the fact that the new parties might share, should there be a recovery, in no way prejudiced" the defendant. *Crowe*, 272 Md. at 489.

Our courts, however, have declined to apply the relation back doctrine in cases where "an additional plaintiff seeks to intervene after the statute of limitations has run[,] [u]nless the additional plaintiff will merely be sharing in the damage award, and not 'pyramiding' the original amount requested." *Grand-Pierre v. Montgomery Cnty.*, 97 Md. App. 170, 178 (1993) (collecting cases).

Mr. Vivar contends that the relation back doctrine should be applied -- as it was in *Crowe* -- because his identity was known to Appellee-Defendants since the initiation of the suit because of his status as a use plaintiff. We are not convinced. To be sure, the language in *Crowe* upon which Mr. Vivar relies expressly states that the doctrine applies when a defendant "has had notice from the beginning that the plaintiff *set[] up and is trying to enforce a claim* against it because of specified conduct." *Crowe*, 272 Md. at 489. By definition, however, a use plaintiff is someone who does not participate in the action. *See supra* note 1. It is not the naming of an individual as a use plaintiff by the individual filing suit, but the subsequent filing of a motion to intervene by a use plaintiff that signifies that the use plaintiff is trying to enforce a claim.

Here, as Appellees aptly note, if Mr. Vivar was allowed to intervene as a party plaintiff, he would not merely share in the potential damages. Rather, Mr. Vivar may be eligible for additional damages that would pyramid Appellee-Defendants' liability. To be sure, under the wrongful death statute, damages may be awarded for, among other things,

mental anguish and emotional pain and suffering.  CJP § 3-904(d).  A jury may well award

additional sums for such damages if there are two, rather than one, party plaintiffs involved.

In such circumstances, the relation back doctrine does not apply.[11]  In light of this

conclusion, we need not address whether good cause existed to excuse Mr. Vivar's failure

to meet the served notice deadline.

### CONCLUSION

For the foregoing reasons, we conclude that the circuit court did not err in denying

Mr. Vivar's Motion to Intervene as untimely.  We, therefore, affirm the judgment of the

circuit court.

**JUDGMENT OF THE CIRCUIT COURT
FOR PRINCE GEORGE'S COUNTY
AFFIRMED. COSTS TO BE PAID BY
APPELLANT.**

---

[11] Further, application of the relation back doctrine here would all but nullify the formal intervention requirements and deadlines delineated in Rule 15-1001, which were the product of deliberate decision making by the Rules Committee.  Indeed, to hold that the relation back doctrine applies would render the statutory deadline obsolete; by claiming application of the relation back doctrine, a use plaintiff would never be filing a motion to intervene after the statutory deadline has passed.